The next case today is United States v. Valentin Dello Perez Soto, Appeal No. 201018. Attorney Glickman, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. My name is Paul Glickman. I represent the defendant, Valentin Perez Soto, in this appeal. Your Honors, I request to reserve two minutes, if possible, for rebuttal. Your Honors, this is one of those cases, a fairly rare occurrence, where the closing argument resulted in plain error and a substantial miscarriage of justice for my client. The prosecution overstepped its legal bounds by instructing the jury what its duty was and what its obligation was to render that duty and what result it should render. By doing so repeatedly, both at the beginning of the closing argument and then hammering it home at the very end of the closing argument, where the prosecution told the jury that the police had done their job in solving the crime, the government had done its job by bringing the crime to the jury, and now it's the jury's job to do its duty and convict. That left very little for the jury to do. The heavy hand of the government took on the role of both prosecutor and trier of fact in that instance. There is no way the jury could not have been motivated by what the prosecutor said. And there was no curative instruction, given or not given, could have corrected that. The impact of that statement after a full trial had such a great impact that it distorted any fair rendering by the jury. Mr. Glickman, you make a very convincing argument that the prosecutor just stepped over the line here and said things that were improper. But when it comes to the harm caused by it, it does strike me that what's striking here is the silence of defense counsel. If it were so clear that this was harmful in the context of this case, why let it happen not just once or twice without a peep? I cannot get into the mind of the defense counsel in this case. Doesn't it suggest that in this case, usually when something hurts, people squeal? But not always in the heat of an argument. In fact, in this case, if you look at the evidence, the defense made its argument was not that the drugs were not in existence or not that there were not drugs, but rather the prosecution had the wrong party, that it was really the confidential informant that was at fault in this instance, not Mr. Valentin Perez Soto. And the prosecution had every right during closing to discount that argument. But what it didn't have the right to do was to tell the jury what the result was. And the prosecution did not express that as an opinion of the prosecution. Rather, it said, this is fact. This is it. Fine. The police had solved this crime. That didn't leave anything. And so, yes, you could look at it and say that the defense attorney should have objected. But also, if you look at it in the Gaza case, which is the closest analogy in the Fifth Circuit, in that case, again, the defense attorney did not object. Similar, maybe somewhat less egregious statements actually made by the prosecution by the closing argument in that case. And the Fifth Circuit said that if there had been an objection, it would have further heightened what the government was trying to say, because it would have made it even more clear and more apparent to the jury that the government was telling them that the case had already been solved and the jury's only duty was to convict. Mr. Glickman, could you again help me with the record, please? It is true that the prosecutor certainly came very close to or went over the argument was the state police have done their jobs. The prosecutors have done their jobs. And now, jury, it's time for you to do your duty. When you recounted this to us, you added the words, do your duty and convict. What does the record show about the exact language? Right. That was the next sentence thereafter was now it's time for you to do your duty and convict. So it was two separate sentences, basically, but they were linked in the sense it all occurred during this one. Paragraph, a closing argument, as best you can, as best as best you can phrase it, it was this statement, and it was more than just that the police had done their duty, that the state police had done their duty. It was that they had solved the crime. I don't think it would be it would be it would have been reversible if they had said the police had done their duty. Mr. Glickman, please just bear with me. Prosecutors very often end arguments with a request for a conviction. The linkage of duty and conviction is what's so problematic here. So did he really say, do your duty and convict? Not in the same sense. That's correct. But the difference is, in this case, as to most cases, and if you look at some of the cases that are cited by the government, in almost all those cases cited by the government before the prosecutor says, we request a conviction or something along those lines. In that case, in all those cases, the prosecutor says, it's your duty to determine guilt or innocence. If you don't believe something to the effect, if you don't believe we proved that case, you must acquit. Right. But in this case, there's none of that discretion. The defense counsel, in closing, must have made a request of the jury. I don't know whether there was a reference to the word duty or not, but there surely was a request to the jury to acquit. Can you please tell us what the record shows? I think that's correct. And that's normal at the end of all closings. One side will say, was there any reference by defense counsel to do your duty? There was no duty reference. And the difference in this case is it's also the prosecution making that statement. It's the government basically linking all these statements. And yes, it's perfectly fair for the government to say at the end of the case, we request a conviction. We request the jury find guilty. That's perfectly appropriate. The problem here is that the government before saying that basically said the police have done their job. They've solved the question. And we request a conviction. And you're right. Perhaps the word and isn't there. But the difference in this case is just the strength of that closing argument. Where does it leave a jury? And if you look at I think the Gaza court basically really expressed that when they evaluated a very similar case in saying that there's no cure for this, there's no curative instruction. And in fact, in this case, if you look at the instructions that the judge gave the jury, and they were the standard instructions to the jury, which said basically nothing that the government or the defense says is evidence. That's true. But at this point, the prosecution wasn't speaking evidence. They were speaking fact. They were speaking what had what had happened. And it wasn't like we believe this, not the submits. We believe this. It is they solve the crime. And yes. So in my mind, there's a distinction between what the prosecution says and what the judge instructs. There was no request here was there for a special instruction that's separate from whether there was an objection. The request for a separate instruction could have been done at sidebar. Am I correct that there was no request? Yes. And that goes back to the fact that there was no objection. No, I'm drawing a distinction. This is plain error review. It could be there was no request for the instruction because, in fact, defense counsel didn't think they'd been harmed, that if the jury did its duty, it would acquit. But that's not what that's not what the defense counsel said. That's what the prosecution said. The prosecution was the one that was speaking to and the prosecution was the one that said that the case had been solved. It wasn't the defense counsel which said that the case had been solved. The defense counsel made the argument. You have another problem here, even if we assume error, given what was found in this fellow's apartment. Isn't it pretty clear the jury was going to convict him? Well, that's the fourth count, right? The first three counts at a distribution, which are the control buys. The last count is the actual possession count, which and I don't think the government can bootstrap itself because that's more than enough evidence on one count to assume that that would be imputed to the other three counts, which required it, which had a different set of evidence for approval. That might be true if it was like $500 worth of drugs or something. But when they find $40,000 and $50,000 worth of drugs, I think most jurors are going to think distribution. But they shouldn't think that with regard to the first three control buys unless there's proof that those because those were particular events. Each one was a separate event occurring at a separate and different time from the drugs that were seized during the search. So you're suggesting that the government would that a jury would say, OK, so he's guilty on this one. We must have done these three, too, even though we don't have proof beyond a reasonable doubt for those three and convict. I don't think that's proper. Well, no, no. The jury's reasoning. We know for sure based what was found in his apartment that he was in the business of selling drugs. That's what he and he was apparently doing quite a bit of it. Well, that's the fourth count. But it's not the more plausible. It also I think one thing also this court should keep in mind is that the prosecution should not feel like it's worth let's take it. Let's take the chance. Let's tell the jury what their duty is to convict. Let's really nail this one home, because most likely if there's no objection or even if there is an object, it'll still be at worst comes as a corrective instruction. But if there's no objection, it comes before the appeals count. The appeals count says, there was enough evidence anyway. It's not plain error and let it go. And that's what happens in a fair number of these cases. But it gives the prosecution this extra oomph and ability to really tip the scales. And I think in this instance, which is not a usual instance, it's not usual where a prosecutor goes through this elaborate statement, elaborate obligation and telling the jury that the case has been solved by the police. That's a pretty strong statement that it was not plain error and that it was not, it did not interfere with my client's ability to have an independent and fair trial. Thank you, Mr. Glickman. If you would mute your audio and video, we'll hear from Mr. Aframe. Good morning, your honors. Seth Aframe representing the United States. So as is clear from the discussion so far, I think the important feature here is that we are in plain error review. And I think that's important in a number of respects. The first one is that when you go through the cases in this area, the court notes, and because it's impossible to anticipate all different forms of language, that there are haziness, there's a haziness about the bright lines, right? They're just, there are not bright lines. And so what objections do is they bring to the fore whether something, where it fits in that continuum. When you don't have an appeal doing what we just did, which is parsing the language, you know, a long time later. And I think what the plain error standards is says, if you're doing that, you really haven't established clear error. So let me focus on what Judge Lips asked, because I think it's very important. Here's exactly what it was. Now it's time for you to do your duty, a period. And then it says, find the defendant guilty. And it listed the crimes that were charged. So it's not conflating them. In my view, as I read that, the duty is to deliberate. Now, of course, the prosecutor is telling the jury what the argument is of what it should do. The government's an advocate. This prosecutor had been talking for many, many minutes, laying out the investigation, responding to the idea essentially that the police set it up. It ends with rhetoric, because lawyers engage in rhetoric. And the rhetoric is that the police did their job. The government did its job. And now it's time for you to do your job. And your job, he doesn't say this, I'm adding this now, your job is to deliberate. And here's my argument, find him guilty. And that doesn't seem to me to be beyond the pale. It seems to me to be a logical ending of a case where the defense called the police's conduct into question. And we certainly see the inverse all the time, right? The police haven't done their job. The defense says all the time, the police haven't done this, the police haven't done that. And for that reason, you should find him not guilty. I think what's... Mr. Akram, let me just stop you there, because I want to explore some of what you have already said. I mean, so duty is mentioned, even if it's only the implication that the duty is to find someone guilty, as opposed to do your duty and deliberate. That's a problem. And I'm sure that you would acknowledge that here, although you may read it one way, and maybe certainly the prosecutor may have meant it that way. Do your duty as jurors, full stop. Implication, I'm asking you to command, find the defendant guilty. But of course, the other side of that perfectly reasonable, especially given the juxtaposition, is do your duty as jurors, find the defendant guilty. So to me, that creates a problem, and that these cases tend to go off on whether the error was I am open to the idea, certainly, that an alert counsel may not object at that point for fear of highlighting. So now you're in waiver territory, if it's a strategic decision, and yet we still have what is, well, I would suggest that our cases say is improper argument, which leads me to, you know, we may find it harmless, or we may find no prejudice under the plain error doctrine, but what would you suggest we do? I'm not saying that you agree with how I lay this out, I'm just telling you this is one way to see it, and I think I may see it this way. What would you suggest we do to keep prosecutors from coming close to the line here? So I think that what we have done in the... So in my view, first of all, I don't think this crossed the line. I think you can say it in the opinion, because the guideposts are helpful. I mean, whether we in the Department of Justice, I know, examine and look for these guideposts, which is why in the beginning of my brief, in the first point, I think the use of justice was wrong, and I concede that. Justice, when you tell the jury to do justice, whether they find guilt or innocence, to me is justice. And when you have a prosecutor saying, do justice, and everyone knows the prosecutor is there advocating conviction, that's an improper use of the word. And I think our cases say that's an improper use of the word, and I don't think it should have been done. I think it's harmless for the reasons I articulate in the brief. Here, when we talk about duty, I don't see the world the same way, Judge Howard, on duty as I do justice. Duty is a job. Everyone's there to do a job. To say that the jury has a job to do, when you don't link it to find, I don't think you're linking it to find it guilty when you just say, find the defendant guilty. What's missing to me here is the prosecutor adding his opinion, adding that he has special knowledge, adding something that suggests to the jury, I know something you don't know. The prosecutor, when... Okay, that was the point you started with. I was asking you to accept that I find a problem with it. What would you suggest we do about that? I think in this case, you should say, look, under our cases, this is not a clear, obvious error. However, I don't agree with what I'm going to say now, but we would say it is not proper for government counsel to discuss the court thinks. It can certainly say that, and I can tell you that the US Attorney's Office would take that clear directive seriously, but I don't think under the cases now, at least I don't know of the case that makes that a clear, obvious error at this point. Sorry, Judge, I didn't hear you. How do you distinguish this from Mandelbaum? I think it's Mandelbaum. Do you know exactly what was said? I don't have that one in front of me. I'm sorry, but I can... I was counting on you. That's all right. Sorry. I'd like to follow up on what Judge Howard was saying. I thought this was even worse than coming right out and saying it looked like counsel knew he wasn't supposed to do it, so he tried to use a formulation that would do it and leave some defense. I mean, you read that last litany, it's pretty clear what he's saying. He's creating momentum for everybody convicting the person by doing their jobs, and then he ends with telling the jury to do the job. I guess I have Chief Judge Howard's concern here, which ties into what Mr. Glickman said at the end, that if we keep letting this stuff off, we're not sending a clear enough message. Now I hear the U.S. Attorney's Office still sort of thinks this was okay. I mean, look, I've tried to distinguish why I think... I'm not saying... Look, my brief is careful to say that there's an argument here that I think it's okay. There's an argument that it's not okay. We're having that conversation, which is what plain error does, and it says, well, if we're having that conversation, then we don't have a clear, obvious error. That doesn't mean that this court can't provide guidance. Now, if you think I'm wrong and it's a clear, obvious error, of course we get, and you would say that, then we would get to the question of prejudice, effect on substantial rights, and if you want, I could talk about the evidence, but I tend to think that in the context on the clear, obvious error, I understand what you're saying, Judge Kayada, and my thought is that we are talking here about a case in which you've had a long-closing argument. Yes, there's rhetoric, but when we talk about vouching, we talk about the prosecutor really saying something that the jury's not positioned to evaluate. The jury here can say, no, the police didn't do their job. I mean, I heard the defense lawyer who talked to me about all the faults in the case, and no, I don't accept what the prosecutor said. I accept what the defense lawyer said. I mean, that's argument, that's bringing the thing to a nub. Were the police corrupt in setting up the situation, or did they do their job? That's what this trial is about. So, at the end of the day, that's really what went on here. Is that all right? Mr. Afrin, you know, I share my colleagues' concerns. There were cases out there, including the Fifth Circuit case, warning the government that when you get to using the word duty, you're in hazardous territory. I also believe it to be true that this was an experienced prosecutor. This was not a neophyte, and it made me wonder about the training that DOJ and the District of New Hampshire U.S. Attorney offer on this question of hazardous closing arguments. This is one of these things where, you know, you start by saying there are no bright line rules, and then you've just suggested to the court that maybe you want us to issue a bright line rule as opposed to the more moderate position. If you're going down that path, you're incurring risk that we're going to, on the facts of the given case, find that there was something improper. So, I'm a little left at sea as to what the government's position is here. Well, so first of all, yes, this prosecutor was very seasoned. In fact, this was his last trial before retirement. Second, we do train on this, and I talk about it, and I would never, and I know I have advised as far as talking about doing justice. I have advised. That's not acceptable. I started my argument, but I was trying to respond directly to Judge Howard. If he in the panel thinks this was wrong, it is helpful when we know that because, obviously, I designed trainings that I provide around things that I learned, but the risk is, Judge Lynch, as you say, language is complicated. That's why I resisted Judge Howard a little bit because I wanted to go back to say, I don't actually think this is a case that triggers a bright line rule statement because I think this is at least very close. In my view, okay. Judge Howard suggested not okay. To me, those statements should be made in cases where it's clearly not okay. We do use that, Judge Lynch. It's not a fool of Aaron to do it. I just think it should be done judiciously when it's clear. I'm trying to argue to you that I don't think it's crystal clear here, but I also have to respond to questions that suggest it is. Yeah, that's helpful. Thank you. Judge Kayada, anything else? No, I do not. Thank you. Thank you, Mr. Aframe. Mr. Glickman, you have two minutes. Okay. Your Honor, you asked the question, what does the Mandelbaum case say? Let me read it. There should be no suggestion that a jury has a duty to decide one way or the other. Such an appeal is designed to stir a passion and can only distract a jury from its actual duty impartiality. It's a pretty clear instruction, not much ambiguity there. Yeah, and it plays off the Young case from the Supreme Court, which says the same thing. Of those cases, there was a direct line drawn between the duty and what the duty was. Not a duty of deliberation, but to come out one way or the other. I think the argument here is that because there's a period rather than a comma in the word and, find them guilty, that that link isn't there. But I think the panel fully understands your argument that the jurors might well take this the other way. But please, I didn't mean to take up your time. The other thing we should note is that we're reading the transcript. The jury is actually sitting there hearing this. They don't hear the period, and whether there's an and or not there seems a very slim distinction as to whether something's acceptable or not. In this case, as one of the judges said, there's a clear crescendo here. It's a building up of duty, duty, duty. Police did their duty, solved the crime. We did our duty, we brought it to you. Now you do your duty, and then separately convict. But it's not that and convict doesn't come a minute or two later. It follows one after another. In the transcript, there's a period. There's no transcript in the oral telling of that. So I think that's a distinction. I think that it's time that this First Circuit really, as the Fifth Circuit did in Garza, sends a signal to prosecutors that this kind of conduct is not acceptable. If the case is strong enough on the facts to convict, the prosecutor doesn't need to do this. Did you have another point on rebuttal, or is this the main? This is it. I'm willing to be finished at this point. Okay, thank you very much. That concludes argument in this case. Thank you, Judge. Attorney Glickman and Attorney Aframe, you should disconnect from the hearing at this time.